# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronhilde J. Gillingham,           :
           Appellant      :
                          :
        v.                   :     No. 2532 C.D. 2015
                          :     Argued: October 20, 2016
County of Delaware           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION BY JUDGE BROBSON**           **FILED: February 14, 2017**


In this negligence action, Appellant Ronhilde Gillingham (Gillingham) appeals from an order of the Court of Common Pleas of Delaware County (trial court), which granted the County of Delaware's (County) motion for summary judgment and dismissed Gillingham's personal injury complaint with prejudice. In so doing, the trial court concluded that the County was immune from liability for the injuries Gillingham sustained after a fall in the Delaware County Recorder of Deeds Office. For the reasons set forth below, we affirm.

## I. BACKGROUND

For purposes of summary judgment, the undisputed material facts are as follows. On November 12, 2012, Gillingham visited the County Recorder of Deeds Office to conduct title searches. Gillingham sat to conduct searches at a County computer, and her foot became entangled in the computer cables and wires under the computer cubicle. With her foot still entangled in the computer cables, Gillingham stood up to walk away from the computer, tripped, and fell.

In a complaint filed on October 9, 2014, Gillingham named the County and the Recorder of Deeds as separate defendants. (Reproduced Record (R.R.) at 7a-12a.) The County filed preliminary objections on behalf of the Recorder of Deeds, arguing that the Recorder of Deeds cannot be sued as an entity distinct from the County. (*Id.* at 15a-16a.) Gillingham amended her complaint, dropping the Recorder of Deeds as a defendant and re-alleging that the County's negligence directly and proximately caused her injuries. (*Id.* at 44a-49a.) Specifically, Gillingham alleged that the County was negligent by its failure to inspect and maintain the floor and failure to make safe or remove the foreign substance—*i.e.*, the computer cables—from the floor. (*Id.* at 11a-12a, Compl. ¶ 19.)

The County filed an answer and new matter, denying the material allegations of Gillingham's complaint and asserting that the County was immune under what is commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§ 8541-8542. (*Id.* at 51a-58a.)

On September 25, 2015, following the completion of discovery, the County filed a motion for summary judgment, in which it again argued that the County was immune under the Tort Claims Act. (*Id.* at 61a-65a.) The County attached to its motion the affidavit of Joseph DeVuono, who placed the computers in their location at the Recorder of Deeds Office. (*Id.* at 203a.) In his affidavit, Mr. DeVuono states:

> The computers and cubicles may be moved for repairs or for cleaning. There is no hardwiring of the computers at the individual stations and nothing at the computer station is bolted or attached to the floor or walls. The computer station cubicle itself as well as each computer are fully moveable and are not affixed in anyway [sic] to the floor or wall.

2

(*Id.* at 203a.)  The County argued that the "real property exception" is not viable in this case because "none of [the computer cables] are affixed or wired to the real estate."  (*Id.* at 74a.)  In response, Gillingham argued that it is not necessary for her to show that a fixture to the real property caused the injuries.  (*Id.* at 225a-31a.)  Instead, Gillingham contended, under the approach from our Supreme Court's decision in *Grieff v. Riesinger*, 693 A.2d 195 (Pa. 1997), it is sufficient for Gillingham to show that the County was negligent in its care, custody, or control of the real property.  (*Id.* at 226a.)  Gillingham argued that the County was negligent in its maintenance of the real property, namely, the floor in the Recorder of Deeds Office.  (*Id.* at 230a.)

On November 17, 2015, the trial court granted the County's motion for summary judgment and dismissed Gillingham's complaint against the County with prejudice.  Gillingham filed a notice of appeal with this Court, and the trial court issued an opinion pursuant to Pa. R.A.P 1925(a) on May 16, 2016.  In explaining its ruling, the trial court cited prior cases from this Court and appears to have concluded that the approach from *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000), is more applicable than the approach set forth in *Grieff*.

On appeal,[1] Gillingham essentially argues that the trial court erred in applying the *Blocker* approach rather than the *Grieff* approach to Section 8542(b)(3) of the Tort Claims Act, 42 Pa. C.S. § 8542(b)(3).  Gillingham contends that the trial court erred because she alleged that the County's negligent care, custody, or control of the floor in the Recorder of Deeds Office, rather than

---

[1] This Court's standard of review of a trial court's order granting summary judgment is de novo, and our scope of review is plenary.  *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).  Under this standard, we may reverse a trial court's order only for an error of law.  *Id.*

3

the computer cables, caused her injuries. Thus, Gillingham argues, the approach from the *Grieff* line of cases is the most applicable analysis. Gillingham also appears to argue that the maintenance of an object of personalty can fall within Section 8542(b)(3)'s exception for real property.

## II. DISCUSSION

### A. The Real Property Exception to Governmental Immunity

"Generally, local agencies are immune from tort liability under Section 8541 of the Tort Claims Act." *Gibellino v. Manchester Twp.*, 109 A.3d 336, 342 (Pa. Cmwlth. 2015). A local agency may, however, be liable for damages that are: (1) recoverable under common law or a statute creating a cause of action; (2) caused by the negligent act of the local agency or its employees acting within the scope of their employment; and (3) caused by one of the specific acts enumerated in Section 8542(b) of the Act. Section 8542(a) of the Tort Claims Act.

At issue in this appeal is whether Gillingham failed to state a claim under Section 8542(b)(3) of the Tort Claims Act, which is referred to as the "real property exception" to governmental immunity.[2] Section 8542(b)(3) of the Tort Claims Act provides:

---

[2] There has been some confusion, both in this case and in Pennsylvania precedent, about the shorthand name to be used for Section 8542(b)(3) of the Tort Claims Act. For clarity, we will refer to the exception in Section 8542(b)(3) of the Tort Claims Act as the "real *property* exception," because "real property" is the language used in the statute. We will refer to Section 8522(b)(4) of the Sovereign Immunity Act, 42 Pa. C.S. § 8522(b)(4), on the other hand, as the "real *estate* exception," because that is the language that the General Assembly used in that statute. Part of the confusion may stem from the joint origin of sovereign immunity and governmental immunity prior to the enactment of their corresponding statutes. *See Dorsey v. Redman*, 96 A.3d 332, 340 (Pa. 2014). Regardless, the Supreme Court of Pennsylvania has held that because the statutory language in these two distinct exceptions "varies markedly" from one
**(Footnote continued on next page…)**

4

**(b) Acts which may impose liability.--** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . .

(3) *Real property*.-- The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

This exception applies "where acts of the local agency or its employees make the property unsafe for the activities for which it is regularly used, for which it is intended to be used or for which it may reasonably be foreseen to be used." *Moles v. Borough of Norristown*, 780 A.2d 787, 791 (Pa. Cmwlth. 2001). "Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000).

---

**(continued…)**

another, they should not be interpreted "in lockstep." *Jones v. Se. Pennsylvania Transp. Auth.*, 772 A.2d 435, 444 (Pa. 2001).

There are two approaches that can be used to determine whether to apply the real property exception to immunity under the Tort Claims Act—the *Grieff* approach and the *Blocker* approach. *Repko v. Chichester Sch. Dist.*, 904 A.2d 1036, 1040 (Pa. Cmwlth. 2006). Both approaches have been applied by the courts. *Id.* We acknowledge that "at times, deciding which approach to apply under a given set of facts is challenging." *Id.* In deciding which approach to apply, this Court determines which line of cases has more analogous facts pertaining to causation.

Under the *Grieff* approach, the determinative inquiry is whether the injury is caused by the care, custody, or control of the real property itself. *Id.* In *Grieff*, our Supreme Court held that the real property exception applied to injuries caused by the alleged negligent care of a fire association's property. *Grieff*, 693 A.2d at 197. There, the fire chief poured paint thinner onto the floor to remove paint from the floor. *Id.* at 196. The paint thinner spread across the floor and caught fire under a refrigerator, causing severe injuries to a bystander. *Id.* The Court explained that the fire chief's alleged negligence was in the paint removal, and paint removal clearly fell within the exception's language of the *care* of the property. *Id.* at 197. The Supreme Court held, therefore, that the real property exception applied, and the chief and fire association were not immune. *Id.*

In cases that followed the model set forth in *Grieff*, the cause of the injury was clearly related to the maintenance of the real property. For instance, in *Hanna v. West Shore School District*, 717 A.2d 626 (Pa. Cmwlth. 1998), this Court held that the real property exception applied to the allegedly negligent cleaning of a school hallway. *Hannah*, 717 A.2d at 629. Likewise in *Snyder v. North Allegheny School District*, 722 A.2d 239 (Pa. Cmwlth. 1998), this Court held that

6

the real property exception also defeated immunity where a school allegedly failed to care for the landing at the top of a set of stairs, where a visitor slipped and fell on ice and snow. *Snyder*, 722 A.2d at 240.

Turning to *Blocker*, the other seminal case in the realm of the real property exception, the Supreme Court addressed the exception in an action where a concert attendee sustained injuries after the bleachers on which she was sitting collapsed. *Blocker*, 763 A.2d at 374. This Court held that a question existed as to whether the City intended the bleachers to be part of the realty. *Id.* at 375. The Supreme Court reversed this Court's determination, holding that an owner's intention with regard to chattel is only relevant where the chattel is, in fact, affixed to the realty. *Id.* The Supreme Court concluded that the bleachers were clearly personalty. *Id.* The Supreme Court held, therefore, that the real property exception did not apply to the concert attendee's injuries. *Id.*

The Supreme Court provided the guidelines for determining if the object that causes an injury is real or personalty:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. . . . Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty. . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery

7

affixed for the use of an owner or tenant but readily removable.

*Id.* (emphasis and citations omitted) (quoting *Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933)).

Under the *Blocker* approach, the determinative inquiry is whether the injury is caused by personalty, which is not attached to the real estate, or by a fixture, which is attached. *Repko*, 904 A.2d at 1040. Thus, under a *Blocker* analysis, if the injury is caused by the real property, including a fixture, the real property exception overrides governmental immunity. *Mandakis v. Borough of Matamoras*, 74 A.3d 301, 305 (Pa. Cmwlth. 2013), *appeal denied*, 84 A.3d 1065 (Pa. 2014). If the injury is caused by personalty that is merely on the real property, however, the political subdivision remains immune. *Id.*

## B. Application

Gillingham essentially contends that the trial court erred by applying the analysis from *Blocker* rather than the analysis from *Grieff*.[3] She argues that the

---

[3] Gillingham also challenges the trial court's reliance on *Moon v. Dauphin County*, 129 A.3d 16 (Pa. Cmwlth. 2015), *appeal denied*, 138 A.3d 7 (Pa. 2016). In *Moon*, the claimant, a resident of a work release center, slipped and fell on a fenced-in walkway covered by ice while exiting the center. The claimant filed an action for personal injuries, averring, in part, that Dauphin County was negligent in restricting entry and exit from the center to an area open to the elements, because of the likelihood of hazardous conditions developing during certain times of the year, and also was negligent in designing of the layout of the center. The claimant further averred that Dauphin County's negligent design constituted the direct and proximate cause of his fall, because ice had accumulated on the walkway outside the only entrance/exit that residents of the center were permitted to use. The claimant's negligent design claim appeared to be based on his assertion that the design of the center was flawed, because it provided only one entrance/exit for residents of the center, and, therefore, residents had no option regarding which route to take during inclement weather. Specifically, because of the fenced-in nature of the walkway associated with the single entrance/exit, the claimant contended that he had no ability to go left or right; instead, he had to pass through the gate into icy/slippery conditions. The trial court, analyzing the matter under the real *estate* exception to *sovereign immunity* (as opposed to the **(Footnote continued on next page…)**

8

**(continued…)**

real property exception to governmental immunity), determined that the claimant's slip and fall was the result of wintry weather and that Dauphin County did not have actual or constructive notice of a dangerous condition. As a result, the trial court concluded that the claim failed under the "hills and ridges doctrine." The trial court, addressing the claimant's negligent design claim, then concluded that the lack of an additional walkway did not constitute a "dangerous condition" of real estate.

On appeal to this Court, we concluded that the claimant failed to satisfy the requirement of Section 8542(a)(1) of the Tort Claims Act due to application of the hills and ridges doctrine, "which protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevation." *Moon*, 129 A.3d at 22-23 (quoting *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1087 (Pa. Super. 1997)). Pursuant to Section 8542(a)(1) of the Tort Claims Act, in order for a local agency to be liable for damages, the damages must "be recoverable under common law or a statue creating a cause of action if the injury were caused by a person not having available a defense" of governmental or official immunity. We then considered whether the claimant's negligent design claim fell within the real property exception to immunity set forth in the Tort Claims Act. In analyzing that issue, the Court, when summarizing the law surrounding the real property exception, admittedly did not incorporate the holding of *Grieff* into its summary and considered cases involving both the real property and real estate exception and pre-*Grieff* case law. Ultimately, however, our analysis was simple—the claimant's injury was caused by the *walkway*, and, therefore, any "design flaw must be of the *walkway* and not the failure to have an alternate route." *Moon*, 129 A.3d at 25 (emphasis added). We then observed that the claimant did not contend that there was defect "of" the walkway and did not contend that the slippery condition "on" the walkway was caused by the walkway. *Id.* at 25-26. Nevertheless, even if we had considered the slippery condition on the walkway, our result would have been the same, because under the hills and ridges doctrine there could be no liability based on the icy conditions under the circumstances in *Moon*.

Here, the trial court appears to have interpreted our decision in *Moon* as an implicit overruling or abandonment of the Supreme Court's holding in *Grieff* and its progeny. *See Snyder v. N. Allegheny Sch. Dist.*, 722 A.2d 239, 245 (Pa. Cmwlth. 1998) (applying *Grieff* to hold that "a dangerous condition or defect when located 'on' real property could fall within the real property exception contained in Section 8542(b)(3) of the Tort Immunity Act" and setting forth list of other cases holding that pre-*Grieff* "on-of" distinction no longer applies). As noted above, under the *Grieff* approach, the determinative inquiry is whether the injury is caused by the care, custody, or control of the real property itself. Moreover, the inquiry encompasses both the dangerous conditions of the real property and the maintenance or care of the real property. Our decision in *Moon* does not address *Grieff* and its progeny. Clearly, our Court cannot overrule the

**(Footnote continued on next page…)**

County was negligent in its care, custody, or control of the real property of the Recorder of Deeds Office by failing to make the floor safe. Gillingham further suggests that it was the floor, rather than the actual computer cables, that caused her injuries. Our recent cases *Repko* and *Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934 (Pa. Cmwlth. 2014), are instructive.

In *Repko*, a table that was placed on its side in a school gymnasium fell onto a student and injured her. *Repko*, 904 A.2d at 1037. The student alleged that she sustained the injuries as a result of the school's negligent maintenance of real property under its care, custody, and control—the gymnasium. *Id.* at 1037-38. This Court rejected the student's attempt to take a *Blocker* factual scenario and assess it under a *Grieff* analysis: "[A]lthough Repko frames the issue in terms of the negligent care of the gymnasium, which is real property, in fact, Repko was injured by a table that fell on her in the gymnasium." *Id.* at 1042 (emphasis omitted).

---

**(continued…)**

Supreme Court's decision in *Grieff*. Furthermore, panel decisions of this Court, such as *Snyder* and the cases cited in *Snyder*, can only be overruled by an *en banc* panel of this Court. *See* Commonwealth Court IOP § 257. Thus, *Grieff* remains valid law, and *Grieff* and *Moon* must be interpreted, as best they can, to give effect to each other. Perhaps the main distinction between the two is the application of the hills and ridges doctrine in *Moon*, which effectively precluded liability for certain weather conditions and thereby negated the "on" real property portion of any analysis.

Any tension that may exist between our holding in *Moon* and our decisions applying *Grieff* does not affect our analysis. As discussed above, *Moon* involved a negligent design claim following a slip-and-fall on an icy, outdoor walkway. *Moon*, 129 A.3d at 18. Conversely, in this case, Gillingham tripped and fell on an item of personalty, specifically computer cables. *Moon*, therefore, does not provide any guidance for the Court in this case.

10

Similarly, in *Sanchez-Guardiola*, this Court rejected the applicability of the real property exception when a traveler fell in the airport. *Sanchez-Guardiola*, 87 A.3d at 941. There, the traveler tripped after she walked between two flower pots, which blocked from view an unmarked platform that was similar in appearance to the surrounding carpet. *Id.* at 936. This Court rejected the argument that the platform or stage constituted a dangerous condition of the real property. *Id.* at 939. Instead, this Court held that because the moveable platform was not affixed or attached to the surrounding floor, it was an item of personalty akin to furniture and not part of the real property. *Id.* at 941.

Here, despite Gillingham's attempt to couch the cause of her injury as a problem with the care, custody, or control of the floor, she was not injured as a result of the floor being negligently maintained. Rather, she tripped because her foot was entangled in computer cables when she tried to stand up and walk away from a computer cubicle. The uncontroverted evidence on record, including the affidavit from Joseph DeVuono, shows that the computer cables were not affixed to the real property. Gillingham attempted to frame the issue as negligent care of the Recorder of Deeds Office floor, just as the student in *Repko* alleged negligent care of the gymnasium and the traveler in *Sanchez-Guardiola* alleged negligent care of the airport floor. As in those cases, however, the cause of Gillingham's injury was the personalty—*i.e.*, the computer cables—rather than the surrounding real property.

Gillingham also cites *Martin By & Through Martin v. City of Philadelphia*, 696 A.2d 909 (Pa. Cmwlth. 1997) (*Martin by Martin*), for support of the argument that "an object or substance on a local agency's property might fall within the real property exception post-*Grieff*." (Gillingham Br. at 29.) In *Martin*

*by Martin*, a minor football player tripped and fell onto a metal pipe at a recreational park. *Martin by Martin*, 696 A.2d at 910. The metal pipe was not affixed to the property at the time that the minor football player fell onto it. *Id.* This Court remanded to the trial court to resolve the factual discrepancy as to whether the pipe was placed in the park by third parties or previously affixed to the property. *Id.* at 912. Thus, the case would only proceed if the metal pipe was at one point affixed to the property. *See Mandakis*, 74 A.3d at 305 n.5 (discussing our holding in *Martin by Martin*). Importantly, *Martin by Martin* does not stand for the proposition that negligent care, custody, or control of personalty falls within the real property exception.

Accordingly, *Martin by Martin* does not provide any support to Gillingham in this case. If the metal pipe in *Martin by Martin* was in fact affixed to the property, which this Court did not determine, that fact alone distinguishes it from the computer cables in this case. Gillingham's suggestion that an object or substance on a local government's property can fall within the real property exception is not an accurate reflection of the law because the inclusion of the word "object" implies that personalty can fall within the exception. An object on a political subdivision's real property does not fall within the exception unless it is a fixture. *Mandakis*, 74 A.3d at 305. The computer cables were not affixed to the Recorder of Deeds Office and are not part of the real property.

### III. CONCLUSION

Because the real property exception applies only to real property, Gillingham's injury from computer cables does not fall within the exception. The

12

County, therefore, is immune under the Tort Claims Act. The order of the trial court is affirmed.

 

 

 

                                 _____

                                 P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronhilde J. Gillingham,           :
             Appellant      :
                           :
        v.                :    No. 2532 C.D. 2015
                           :
County of Delaware               :

# **O R D E R**

AND NOW, this 14th day of February, 2017, the order of the Court of Common Pleas of Delaware County is AFFIRMED.

 

_____

P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ronhilde J. Gillingham, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 2532 C.D. 2015 |
| | : | Argued: October 20, 2016 |
| County of Delaware | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: February 14, 2017

Respectfully, I dissent.    The majority holds that if an item of personalty is present in the chain of causation, then the plaintiff cannot pursue a tort claim under the real property exception to the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §§8541-8542.  This overstates the real property exception, as construed by our Supreme Court.  The ultimate question is whether Ronhilde Gillingham's injury was caused by the County's negligent maintenance of the floor or its negligent maintenance of the computer cords.  The resolution of this question should be made by a jury.

Gillingham sustained injuries in the Delaware County Recorder of Deeds Office when her foot became entangled in computer cables located on the floor under a computer station.  When Gillingham attempted to walk away from the computer station, her foot remained entangled in the computer cables, causing her to trip and fall.  Gillingham filed suit against the County, alleging it was negligent because it did not inspect and maintain the floor.  The County denied the allegations, and asserted that it was immune under the Tort Claims Act.

Local government agencies are generally immune from tort liability under the Tort Claims Act. 42 Pa. C.S. §8541. There are, however, several exceptions to this grant of immunity, which allows an injured party to recover in tort from a local agency provided that:

> (1) the damages would be otherwise recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under Section 8541; (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one or more of the eight enumerated categories of exceptions to immunity found in subsection (b). 42 Pa. C.S. §8542(a)(1), (2).

*Sellers v. Township of Abington*, 67 A.3d 863, 869 (Pa. Cmwlth. 2013). The exception relevant here is the "real property exception" found in 42 Pa. C.S. §8542(b)(3). The real property exception states:

> (b) Acts which may impose liability. – The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> * * *
>
> (3) Real Property. – *The care, custody or control of real property in the possession of the local agency*, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
>
> > (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

MHL-2

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

42 Pa. C.S. §8542(b)(3) (emphasis added).

In determining whether the real property exception to the Tort Claims Act is applicable, two approaches have emerged: the *Blocker* approach and the *Grieff* approach. We have explained the difference as follows:

> Under the *Blocker* approach, the determinative inquiry is whether the injury is caused by personalty, which is not attached to the real estate, or by a fixture, which is attached. Under the *Grieff* approach, the determinative inquiry is whether the injury is caused by the care, custody or control of the real property itself. Both approaches have been applied by the courts.

*Repko v. Chichester School District*, 904 A.2d 1036, 1040 (Pa. Cmwlth. 2006). In deciding which approach to follow, the court is tasked with determining which line of cases is more analogous in terms of causation. Admittedly, "deciding which approach to apply under a given set of facts is challenging." *Id.*

In *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000), the plaintiff sustained injuries when the bleacher on which she was sitting collapsed. Our Supreme Court agreed that the City was negligent in the maintenance of the bleacher. However, because the bleacher was not attached to the floor of the

MHL-3

concert hall, it was an item of personalty.[1]  Accordingly, the Supreme Court concluded that the real property exception did not apply to the plaintiff's claim for damages.  Under the *Blocker* approach, the relevant question is whether the injury is caused by an item of personalty, which is not attached to the real estate, or by a fixture, which is attached.

The second approach stems from *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997).  In *Grieff*, a bystander was burned when paint thinner, being used to remove paint from the floor, spread and caught fire under a refrigerator.  Our Supreme Court held that the negligence related to "care of real property" and, thus, fell within the real property exception.  Accordingly, the plaintiff was able to recover for her injuries.  The relevant inquiry under the *Grieff* approach is whether the injury was caused by the care, custody, or control of the real property, even where personalty, *i.e.* paint thinner, was implicated in the causation of the plaintiff's injuries.

_____

[1] In *Blocker*, the Supreme Court reiterated the guidelines for determining if the object that causes an injury is realty or personalty:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty-to them the ancient maxim "Quicquid plantatur solo, solo cedit" applies in full force.... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable....

*Blocker*, 763 A.2d at 375 (quoting *Clayton v. Leinhard*, 267 A. 321, 322 (Pa. 1933)).

As the majority observes, deciding which approach to apply to Gillingham's injury requires an examination of the line of cases that have followed *Blocker* and *Grieff*. The subtle distinctions between *Blocker* and *Grieff* and their progeny have produced jurisprudence that can only be described as hair splitting.

This would have been a *Blocker* case had Gillingham been electrocuted by the computer lines or if the computer monitor had fallen on her foot. The County's negligence could only be related to the care of personalty. But those are not the facts. The computer lines were arranged in a fashion that impeded her ability to walk away from the work station without falling, which can be reasonably characterized as maintenance of the real property, under the *Grieff* analysis.

The decision of whether to apply *Blocker* or *Grieff*, which results in a drastically different result for Gillingham, turns on the nature of the negligence. Whether the County's maintenance of the computer cables constituted negligence in its maintenance of the floor is a question for the jury. This is consistent with our Supreme Court's directive, for example, that the question of whether an agency has constructive notice of a dangerous condition is a question for the jury, and a court may decide the issue "only when reasonable minds could not differ as to the conclusion." *Department of Transportation v. Patton*, 686 A.2d 1302, 1305 (Pa. 1997). Here, whether Gillingham's injury resulted from negligent care of the floor in the Recorder of Deeds Office or negligent care of the computer cables is too close to call. Reasonable minds can disagree.[2]

---

[2] The concurrence would hold that had the computer wires been negligently placed across a walkway, a different conclusion would be reached. In that scenario, the walkway could be deemed unsafe for its intended purpose, and thus an injury to a pedestrian would be the result of the local agency's "care, custody and control of real property." Whether under a desk or across a

**(Footnote continued on the next page . . .)**

For these reasons, summary judgment is not appropriate here. "Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Company*, 908 A.2d 888, 896 (Pa. 2006). Because there is a material question of fact as to whether Gillingham's injuries resulted from negligent maintenance of the floor or negligent maintenance of the computer cords, I would reverse the trial court and remand for further proceedings.

_____
MARY HANNAH LEAVITT, President Judge

---

**(continued . . .)**
walkway, the computer cords remain on the floor of the Recorder of Deeds office. Under our current two-approach analysis, this location difference, which may amount to inches, could change the analysis from one that falls indisputably under *Blocker* to one that falls indisputably under *Grieff*.

Ronhilde J. Gillingham,      :
          Appellant      :
                          :
          v.              :  No. 2532 C.D. 2015
                          :  Argued:  October 20, 2016
County of Delaware      :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

CONCURRING OPINION BY
SENIOR JUDGE PELLEGRINI        FILED: February 14, 2017

       The issue in this case is whether a person using a county computer to conduct title searches whose foot becomes entangled in computer cables and wires under the computer cubicle when she stood up causing her to fall and injure herself can maintain an action under the real property exception to governmental immunity. That provision provides that a local agency, like the county, can be held liable for its actions or that of its employees involving negligence related to the "care, custody or control of real property in the possession of the local agency." 42 Pa.C.S. § 8542(b)(3). While I agree with the majority that the negligence here does not fall within the real property exception, I disagree that the local agency is immune merely because the injury is caused by local agency personal property.

       There is no dispute that the local agency personal property exception does not apply because that exception is limited to the loss or damage of the personal

property of others that is within the control of the local agency. 42 Pa.C.S. § 8542(b)(2).[1] The question here is whether it falls within the local agency real property exception.

The local agency exception for real property language of "care, custody or control" is different from the language in the sovereign immunity exception that waives immunity for "dangerous conditions of real property." Notwithstanding the difference in language, under both exceptions, the test originally employed to determine whether an action was maintainable was dependent on "a legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous." *Finn v. City of Philadelphia*, 664 A.2d 1342, 1346 (Pa. 1995). This is known as the "on-off" standard, i.e., the physical defect "of" the property itself must have caused the damages to fall within the exception. *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987).

That changed with our Supreme Court's decision in *Grieff v. Reisinger*, 693 A.2d 195 (Pa. 1997). In that case, a fire chief poured paint thinner to remove paint from the floor when the paint thinner spread across the floor and caught fire under a refrigerator, causing severe injuries to a bystander. Recognizing the difference in language between the Tort Immunity and Sovereign Immunity Acts, our

---

[1] The personal property exception under the Sovereign Immunity Act for a commonwealth party is much broader. While commonwealth parties are also liable for property they hold for others, with the exception of nuclear or radioactive devices, immunity has also been waived for negligence arising for injuries that result out of the negligent care, custody or control of personal property. 42 Pa. C.S. §8522(b)(3).

Supreme Court abandoned the on-off distinction for the real property exception for local agencies only and found that the paint removal was an activity that fell within the local agency real property exception because it involved the caring of the real property. The implication of this opinion is that the "care, custody or control" language requires the local agency to keep its property safe for its intended purpose from all sorts of negligent conditions, not just those that originate of the property. *See also Snyder v. North Allegheny School District*, 722 A.2d 239 (Pa. Cmwlth. 1998).

Other cases cited by the majority do not involve a different test than set forth in *Grieff*, but instead focus on whether the injury involved the care, custody and control of real property or personal property. In *Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000), a concert attendee was injured when bleachers she was sitting on collapsed. The court held that because they were not affixed to the realty, the bleachers were personal property and not real property so the real property exception did not apply. Notably, if they were affixed like those in a stadium, the local agency would be liable. In *Repko v. Chichester School District,* 904 A.2d 1036 (Pa. Cmwlth. 2006)*,* a student who was playing basketball during gym class went to retrieve a basketball when a table leaning on its side against the bleachers fell over causing the student to sustain a deep cut. Because the injury was caused by the way the table was placed against the bleachers and did not involve the care, custody or control of the real property, we held that exception did not apply.

The question in this case is when the plaintiff stood up to walk away from the computer and fell on the wires on the floor under the computer terminal involved, did that involve negligence involving personal property – the computer – or

negligence involving the care, custody and control of real property – the floor. Because the plaintiff's injuries directly flowed from her use and the county's care of the computer, i.e., personal property, I also hold that the real property exception does not apply because any purported local agency negligence involved the care, custody and control of personal property and not real property. However, if those computer wires were negligently placed across a walkway making the real property unsafe for its intended purpose and a pedestrian was injured, I would hold that would involve the local agency's care, custody and control of real property.

For the foregoing reasons, I concur.

_____
DAN PELLEGRINI, Senior Judge