# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Astou Diop, Tanyita Henry,    :
and Awa Gaye,    :
          Petitioners    :
    :
        v.    :   No. 363 M.D. 2020
    :   Argued: May 7, 2024
Bureau of Professional and    :
Occupational Affairs, State Board    :
of Cosmetology of The    :
Commonwealth of Pennsylvania,    :
          Respondents    :


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
            **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
            **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: June 7, 2024**


Presently before this Court are cross-applications for summary relief filed by Astou Diop and Awa Gaye's (collectively, Petitioners)[1] and the Bureau of Professional and Occupational Affairs (Bureau), State Board of Cosmetology (Board) (collectively, Respondents). Petitioners and Respondents both seek summary relief in their favor on Petitioners' Second Amended Petition for Review (Petition), wherein Petitioners assert an as-applied substantive due process challenge to certain provisions of the Beauty Culture Law (the Law),[2] which require Petitioners

---

[1] Tanyita Henry was originally a named petitioner but was dismissed as a party in *Diop v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 272 A.3d 548 (Pa. Cmwlth. 2022) (*Diop I*), leaving just the two Petitioners.

[2] Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§ 507-527.

to obtain a limited license to practice natural hair braiding for compensation in the Commonwealth. After review, we deny the applications as there are disputed material facts precluding such relief.

## I.  BACKGROUND

### A.  *The Law's Requirements for Natural Hair Braiders*

A brief overview of the Law and its applicability to natural hair braiders is helpful to understand Petitioners' claims. In 2006, the General Assembly amended the Law to include a natural hair braiding limited licensure requirement. Section 2 of the Act of July 7, 2006, P.L. 704, No. 99. Section 1 of the Law defines "[n]atural hair braiding" as

> the practice of utilizing techniques that result in tension on hair roots of individuals, such as twisting, wrapping, weaving, extending, locking or braiding of the hair. The term does not include the application of dyes, reactive chemicals or other preparations to alter the color or to straighten, curl or alter the structure of hair.

63 P.S. § 507. Section 5(b)(3)(i) of the Law provides for a limited license to practice natural hair braiding and sets forth the requirements for obtaining such a license. It states, in relevant part:

> An applicant for a natural hair braiding license shall have completed three hundred hours of [B]oard-approved subjects relating to sanitation, scalp care, anatomy and natural hair braiding in a cosmetology school and passed an examination limited to that practice. Licensed natural hair braiders may operate a salon limited to that license. An applicant may be permitted to take a written examination upon completion of at least two hundred fifty hours of instruction in natural hair braiding in a licensed school of cosmetology. The examination shall include both theoretical and procedural skill questions as prescribed by the [B]oard. Any applicant may apply and is eligible for licensure upon (A) passing the written examination, (B) completion of the required three hundred

hours of [B]oard-approved subjects, and (C) certification by a duly licensed school of satisfactory completion of all program requirements.

63 P.S. § 511(b)(3)(i). Section 2(2) of the Law states that it is "unlawful for any person to . . . practice . . . or maintain any place for the practice of . . . natural hair braiding . . . for compensation [without]" at least a limited license. 63 P.S. § 508(2). Under Section 7.31(c) of the Board's Regulations, a person could have applied for a limited license based on experience until January 11, 2010. 49 Pa. Code § 7.31(c). In addition, Section 9 of the Law provides:

> Any person who has practiced or taught cosmetology under a certificate, license or permit, for not less than two years in another state, territory, or the District of Columbia, may secure the license required by this [Law] without an examination or compliance with other requirements as to age or education: Provided, [t]hat the Board shall be satisfied that the standards provided for licensure under the laws of the place wherein the applicant's license was issued are the same or substantially the same as those provided for hereunder, that similar privileges are accorded persons licensed under the laws of the Commonwealth, that the applicant holds a valid license from the place wherein he is entitled to practice, and that all the terms and conditions prescribed by the Board are complied with by the applicant. Such application shall be accompanied by an affidavit of a licensed physician that the applicant was examined and is free from all contagious and infectious diseases, and the license fee required by this [Law]. Students, upon graduating from licensed schools of cosmetology, may apply for, and receive . . . , a temporary license to practice in the field of cosmetology until the next regular examination . . . under the provisions of this [Law].

63 P.S. § 515.

### B. Petitioners' Claims

In June 2020, Petitioners initiated this action in our Court's original jurisdiction challenging the constitutionality of the Law. Petitioners ultimately filed

3

the Petition,[3] the claims of which we summarized in *Diop v. Bureau of Professional and Occupational Affairs, State Board of Cosmetology*, 272 A.3d 548 (Pa. Cmwlth. 2022) (*Diop I*), as follows:

> Count I of the Petition asserts that the Law's licensing requirements for natural hair braiders, as applied to Petitioners, violates Petitioners' substantive due process rights as guaranteed in [a]rticle I, [s]ection 1 of the Pennsylvania Constitution[, PA. CONST. art. I, § 1]. [(]Petition ¶¶ 252-56.[)] Petitioners clarify that their Count I substantive due process challenge is also a facial challenge to the Law's licensing requirements. [(]*Id*. at 39-40.[)] Specifically, they assert that the Law's licensing requirements bear no substantial relationship to the protection of public health, safety, welfare, or any other legitimate government interest, and that requiring a license for natural hair braiding serves only illegitimate economic protectionism. [(]*Id*. ¶¶ 257-65.[)] Petitioners contend that they do not have an adequate remedy for the irreparable harm to their constitutional rights other than an injunction to bar Respondents from enforcing the Law's requirement that natural hair braiders be licensed. [(]*Id*. ¶ 266.[)]

> Count II of the Petition asserts that the Law's licensing requirements for natural hair braiders violate the equal protection guarantee in [a]rticle I, [s]ection 26 of the Pennsylvania Constitution, [PA. CONST. art. I, § 26,] both facially and as applied to Petitioners. [(]Petition ¶¶ 268-81.[)] In support, Petitioners assert that the Law treats similarly situated persons differently by allowing licensed cosmetologists, who lack any training in natural hair braiding, to provide the service, while denying experienced, but unlicensed, natural hair braiders the same right. [(]*Id*. ¶¶ 277-80.[)]

> Petitioners seek a declaration from this Court under the Declaratory Judgments Act[, 42 Pa.C.S. §§ 7531-7541,] that the licensing requirements of the Law pertaining to natural hair braiding are unconstitutional. They further request that this Court permanently enjoin Respondents from enforcing the licensing requirements and award attorney fees to Petitioners.

---

[3] *Diop I* also summarized the procedural history predating the filing of the Petition, which we need not restate here.

4

*Diop I*, 272 A.3d at 557-58.

Respondents filed preliminary objections (POs) to the Petition. In *Diop I*, we sustained Respondents' PO as to Petitioners' facial substantive due process claim in Count I. The Court also sustained Respondents' demurrer as to the equal protection claim in Count II. Accordingly, only Petitioners' as-applied substantive due process claim in Count I remained. Respondents thereafter filed an Answer and New Matter and discovery ensued.

### C. The Cross-Applications

Petitioners subsequently filed their Motion for Summary Judgment, which this Court treats as an application for summary relief pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b) (Application). Petitioners argue, following discovery, that the undisputed material facts show that they are entitled to judgment in their favor as a matter of law. Specifically, Petitioners contend that the undisputed facts show that the Law is unconstitutional as applied to Petitioners under the analysis outlined in *Gambone v. Commonwealth*, 101 A.2d 634 (Pa. 1954). First, they believe that the first prong of the *Gambone* test is satisfied as the Law is unreasonable, unduly oppressive, and unnecessary as applied to them because it imposes hundreds of hours of costly and irrelevant coursework, which is difficult to obtain, on Petitioners who have been natural hair braiders since they were young and have been practicing natural hair braiding for years without complaints. Petitioners also argue that the Law bears no real or substantial relationship to the protection of public health, safety, or welfare or to any legitimate government interest, the second prong of the *Gambone* test. Petitioners contend the undisputed facts here are identical to those of *Thiam v. Bureau of Professional and Occupational Affairs, State*

5

*Board of Cosmetology*, 301 A.3d 942 (Pa. Cmwlth. 2023), in which we concluded the Law was unconstitutional as applied to that petitioner.

For support, Petitioners point to each of their excerpted answers and objections to Respondents' interrogatories, Petitioners' deposition transcripts, and Petitioners' declarations to show the years of experience they have in their craft, explain how they perform the same, the efforts they undertook to become licensed, and the alleged hardships that licensure has on them, their businesses, and their families. Petitioners also point to an expert report authored by Pamela Ferrell, a professional hair braider and hair braiding instructor, which collected data of the curricula provided at cosmetology schools in the Commonwealth and concluded that these courses are expensive, not readily available, and teach improper and dangerous techniques that are not relevant to natural hair braiding. In addition, Petitioners attached an excerpt of the deposition transcript of Ian J. Harlow, former Acting Deputy Secretary at the Department of State and Commissioner of the Bureau, describing the challenges caused by the licensure examination being offered only in English, although natural hair braiding is frequently performed by West African immigrants, as well as a Bureau report issued pursuant to an executive order relating to licensing concluding there are no health or safety risks associated with natural hair braiding. (Ex. 7; *see also* Exs. 10, 16, 21.) Petitioners attach several other exhibits they contend support their claim, including some exhibits also introduced in the *Thiam* litigation.

Respondents request that the Court deny Petitioners' Application, asserting there are genuine issues of material fact that must be resolved in their favor at this procedural posture. Moreover, they assert Petitioners are relying on their own testimonial statements and declarations, which even if uncontradicted, cannot be

6

used to establish the absence of a genuine issue of material fact under *Borough of Nanty-Glo v. American Surety Co. of New York*, 163 A. 523 (Pa. 1932). In addition, Respondents contend that Gaye's claim is moot because she has a provisional cosmetology license, which enables her to practice natural hair braiding, and has not shown that she could not obtain a permanent license based upon reciprocity. Even assuming the claim is not moot, Respondents argue that neither Petitioner has established a clear right to relief. Specifically, they argue Petitioners have not satisfied the elements of the *Gambone* analysis. Among other things, Respondents challenge Petitioners' arguments regarding the relevance of the training necessary for a limited license's educational requirements, which include scalp care, anatomy, and sanitation, and the alleged hardships caused by the limited licensing requirement. For instance, Respondents argue that the difficulty in hiring licensed employees to work in their salons is irrelevant to whether the Law is unconstitutional as applied to Petitioners and that there is no evidence that Diop has a language barrier, like the petitioner in *Thiam* had. Respondents further differentiate *Thiam* from this case because the Court in *Thiam* reviewed a certified record in its appellate jurisdiction and concluded that Respondents did not provide sufficient evidence showing that the natural braiding services provided by the petitioner in *Thiam* posed significant health or safety risks, whereas this case is brought in the Court's original jurisdiction, where it will act as factfinder. Furthermore, here, the Board points to the deposition of Deborah Dunn (Dunn), who operates the Lancaster School of Cosmetology and serves as Board President of the Mid-Atlantic Association of Career Schools, describing circumstances surrounding enactment of the limited license requirement and accommodations that were made to make it less onerous on individuals interested only in practicing natural hair braiding while balancing health

7

and safety concerns for the consumers. Thus, the Board argues that, unlike in *Thiam*, the Court here could determine the Law is reasonably tailored to bear a real and substantial relationship to those health and safety concerns under the second *Gambone* prong.

Although Respondents believe there are material facts in dispute, should the Court determine there are not and that this matter involves only questions of law, Respondents filed their own Cross-Application for Summary Relief (Cross-Application) requesting judgment be entered in their favor and that the Petition be dismissed.

Petitioners respond[4] that Gaye's claims are not moot because there is no guarantee that she will be granted a permanent license. Petitioners also claim Respondents have not pointed to any disputed facts but rather assert that they have not had the opportunity to fully develop the facts. They also claim that Respondents' formulation of the *Gambone* test is incorrect as there is no requirement under the law that Petitioners must show they cannot comply with the Law to succeed with an as-applied challenge. Should the Court accept Respondents' formulation of the *Gambone* test, Petitioners assert there are issues of material fact that would preclude summary relief in Respondents' favor.

## II.    ANALYSIS

### A.    *Mootness*

As a preliminary matter, we begin with Respondents' argument that Gaye's claim is moot as she has obtained a provisional cosmetology license that enables her

---

[4] Petitioners filed both a reply brief in support of their Application and a brief in opposition to Respondents' Cross-Application. We have combined their arguments for ease of discussion and eliminated any arguments to the extent they were previously asserted.

to practice natural hair braiding in the Commonwealth. "The doctrine of mootness requires that an actual case or controversy be in existence 'at all stages of review, not merely at the time the complaint is filed.'" *Driscoll v. Zoning Bd. of Adjustment of City of Phila.*, 201 A.3d 265, 268 (Pa. Cmwlth. 2018) (quoting *In re Gross*, 382 A.2d 116, 119 (Pa. 1978)). An actual case or controversy exists where there is:

> (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

*Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004) (citation omitted). A claim is moot "when facts that arise after the initiation of the case leave a litigant without a stake in the outcome of the matter." *Commonwealth v. Foster*, 214 A.3d 1240, 1246 (Pa. 2019).

Gaye argues the Law is unconstitutional as applied to her, which requires her to obtain a license to practice natural hair braiding in the Commonwealth. While Gaye may have a provisional license to practice natural hair braiding, she does not possess a permanent license and it is not clear that she will be granted one. Thus, Gaye has "a stake in the outcome of th[is] matter." *Id.* Based on the foregoing, Gaye's claim is not moot.

### B. General Summary Relief Principles

We next turn to the cross-applications seeking summary relief. Under Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), this Court will grant summary relief where the moving party shows their right to relief is clear and no material facts are disputed. *Commonwealth by & through Krasner v. Attorney General*, 309 A.3d 265, 270 n.6 (Pa. Cmwlth. 2024). A fact is considered

9

material "if its resolution could affect the outcome of the case under the governing law." *Strine v. Commonwealth*, 894 A.2d 733, 738 (Pa. 2006). "An application for summary relief is properly evaluated according to the standards for summary judgment[,]" *Meyers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015), and the record is viewed in a light most favorable to the nonmoving party, *Meggett v. Pennsylvania Department of Corrections*, 892 A.2d 872, 877 (Pa. Cmwlth. 2006). The record in an application for summary relief is the same as a motion for summary judgment in that it includes depositions, affidavits, answers to interrogatories, pleadings, and reports by expert witnesses. *Borough of Bedford v. Dep't of Env't Prot.*, 972 A.2d 53, 60 n.6 (Pa. Cmwlth. 2009). But, under *Nanty-Glo*, "[h]owever clear and indisputable may be the proof when it depends upon oral testimony, it is nevertheless the province of the [factfinder] to decide . . . as to the law applicable to the facts." 163 A. at 524 (internal quotation marks and citation omitted); *see also Woodford v. Ins. Dep't*, 243 A.3d 60, 70 (Pa. 2020) (citing *Nanty-Glo* for the proposition that issues of credibility are for the factfinder, and summary judgment was not appropriate where the only evidence in support was oral testimony); *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 37 (Pa. 2006) ("A party moving for summary judgment must rely on something more than oral testimony that is essential to its motion because the decision whether to credit such testimony must be made by a jury rather than a judge."); *Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934, 938 (Pa. Cmwlth. 2014) ("The '*Nanty-Glo* rule' essentially means that the testimonial affidavits or depositions of the moving party's witnesses are insufficient by themselves to establish a material fact because the credibility of the testimony is still a matter for the jury[;]" however "[t]he *Nanty-Glo* rule does not preclude the grant of summary judgment when the moving party relies on the testimonial

evidence of an adverse party.") (internal citations and quotation marks omitted). As our Supreme Court has noted, "[t]he function of the summary judgment proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions." *Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900, 902 (Pa. 1989) (internal quotation marks and citation omitted).

    C.    *Whether Genuine Issues of Material Fact Preclude Relief*

Petitioners present an as-applied constitutional challenge to the Law, and an as-applied challenge, as opposed to a facial challenge, "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprive[s] that person of a constitutional right." *Peake v. Commonwealth*, 132 A.3d 506, 516-17 (Pa. Cmwlth. 2015) (citations omitted). In *Thiam*, our Court explained that

> [i]n *Nixon v. Commonwealth*, our Supreme Court stated that to determine whether one's substantive due process rights have been violated, a court must undertake a two-step analysis to determine [(]1) whether the licensing requirements are "unreasonable, unduly oppressive, or patently beyond the necessities of the case and" [(]2) whether those requirements bear "a real and substantial relation to the objects sought to be obtained," when applied to the individual under the circumstances presented in the case. . . . 839 A.2d 277, 287 ([Pa.] 2003).

*Thiam*, 301 A.3d at 954. This two-step analysis was derived from *Gambone*, which provided that

> a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

101 A.2d at 637.

Preliminarily, we must determine whether there are any material facts in dispute pursuant to Rule 1532(b). Because Petitioners present an as-applied challenge to the Law, and an as-applied challenge analyzes whether a law's "application to a particular person under particular circumstances deprive[s] that person of a constitutional right[,]" Petitioners must establish that the Law, as applied to their particular circumstances, deprives them of a constitutional right. *Peake*, 132 A.3d at 516-17. Petitioners argue they meet the first prong of the *Gambone* test because the undisputed facts show that the Law is unreasonable, unduly oppressive, and unnecessary as applied to them. For example, Petitioners point to their depositions, declarations, and answers to interrogatories to show that they learned natural hair braiding at a young age from family members in Senegal and have practiced their skills ever since, that attending cosmetology school would divert time away from their respective salons and neither Petitioner could afford to cut back on their hours, and that neither Petitioner has ever had a complaint or health or safety violation. (*See* Petitioners' Br. at 10-12, 21-24, 29-30.) Petitioners also argue that they meet the second prong of the *Gambone* test, that the Law bears no real or substantial relationship to the protection of public health, safety, or welfare or to any legitimate government interest, because the undisputed facts are identical to those in *Thiam*. Again, Petitioners point to their depositions, declarations, and answers to interrogatories to show that they have vast experience in natural hair braiding and neither Petitioner has ever had any health or safety complaints, like the petitioner in *Thiam*. (*See id*. at 36-38.) Petitioners' arguments relating to the elements of the *Gambone* test rely upon material facts established through depositions, declarations, and answers to interrogatories. *Strine*, 894 A.2d at 738. However, under the *Nanty-*

12

*Glo* rule, this Court may not rely on testimonial evidence alone, **even if uncontested**, to grant summary relief because it presents **matters of credibility for the factfinder**. 163 A. at 524; *Woodford*, 243 A.3d at 70; *Krentz*, 910 A.2d at 37. Summary relief "cannot[] be used to provide for trial by affidavits or trial by depositions." *Hoffman*, 553 A.2d at 902.

Notwithstanding, Respondents point to evidence that does create issues of material fact, which would also prevent a grant of summary relief in any party's favor and rely upon their own testimonial evidence to support their Cross-Application. For example, to challenge Petitioners' argument that they meet the first prong of the *Gambone* test since they have never had a health or safety violation, Respondents cite their deposition of Dunn, where she testified that a lack of health or safety violations may be attributable to the limited licensing requirement. (*See* Respondents' Br. at 13-14.) Respondents also argue that Petitioners cannot meet the second prong of the *Gambone* test, because Dunn testified in her deposition that there were health and safety concerns related to natural hair braiding salons providing chemical and hair cutting services that necessitated the limited license to practice natural hair braiding. (*See id*. at 16-18.)

## III. CONCLUSION

In sum, while Petitioners include other evidence to support certain aspects of their claims, their reliance solely on their own depositions, declarations, and discovery responses to satisfy some elements of their claims requires the Court to make a credibility determination, which at this procedural posture, is improper, even in the absence of contradictory evidence. *Woodford*, 243 A.3d at 70; *Krentz*, 910 A.2d at 37; *Nanty-Glo*, 163 A. at 524. Similarly, Respondents point to evidence that

13

creates genuine disputes of material fact and rely upon Dunn's deposition testimony for their position. Oral testimony establishing material facts such as Petitioners' skills, lack of health or safety violations, and difficulty obtaining a limited license, and Dunn's explanation of the Law's requirements and rationale, are matters of credibility for the factfinder. Accordingly, we are constrained to deny Petitioners' Application and likewise constrained to deny Respondents' Cross-Application as material facts remain in dispute.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Astou Diop, Tanyita Henry,     :
and Awa Gaye,     :
           Petitioners     :
     :
          v.     :   No.  363 M.D. 2020
     :
Bureau of Professional and     :
Occupational Affairs, State Board     :
of Cosmetology of The     :
Commonwealth of Pennsylvania,     :
          Respondents     :

## O R D E R

**NOW**, June 7, 2024, the Motion for Summary Judgment filed by Astou Diop and Awa Gaye is DENIED.  The Cross-Application for Summary Relief filed by the Bureau of Professional and Occupational Affairs, State Board of Cosmetology is likewise DENIED.

 

 

_____
**RENÉE COHN JUBELIRER,** President Judge